1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE
9

10 DANE C. JOHNSON and KATHLEEN
M. JUSTIN, individually and the marital
11 community comprised thereof,

12                        Plaintiff,

13          v.

14 ALLSTATE INSURANCE COMPANY,
a foreign insurance company,
15
                        Defendant.
16

CASE NO. 2:11-cv-00927RSM

ORDER ON DISPOSITIVE
MOTIONS

17          This matter comes before the Court on Defendant's motion to dismiss pursuant to Federal

18 Rule of Civil Procedure 12(b)(6), Dkt. # 8, and Plaintiff's Motion for Partial Summary Judgment

19 pursuant to Federal Rule of Civil Procedure 56.  Dkt. # 10.  For the reasons set forth below, the

20 Court DENIES Defendant's Motion to Dismiss, and GRANTS IN PART AND DENIES IN

21 PART Plaintiff's Motion for Summary Judgment.

22                                **I. BACKGROUND**

23          This is an insurance coverage dispute.  Plaintiffs Dane C. Johnson and Kathleen M. Justin

24 ( "Plaintiffs") own a waterfront home on Puget Sound in the town of Burien (the "Property").

Plaintiffs purchased a "deluxe" homeowner's insurance policy from Defendant Allstate Insurance Company covering the Property (the "Policy").  Plaintiffs allege that a severe windstorm struck the Burien area on November 22 and 23, 2010, and that logs and other debris in the water struck their home's foundation during the storm.  Plaintiffs allege that, on November 23, they "felt the house suddenly fall in a downward direction and, upon inspection, noted that the house had shifted or otherwise displaced in a downward direction."

Plaintiffs retained a structural engineer to investigate the damage, and he determined that the house "displaced both horizontally and vertically, dropping several inches downward."  Dkt. # 11 (Say Decl., ¶ 8).  Allstate hired its own structural engineer, who determined, among other things, that "[t]he entire structure, excepting the shed entry dormer on the southeast (hillside) face of the house was titled," and that "[t]he house is out of plumb with the top of the house titling toward Puget Sound."  Dkt. # 13 (Johnson Decl., Ex. C (Evans Rpt., at 73-74)).  Allstate's structural engineer further concluded that the damage resulted from "water movement or debris in the water."  *Id*. at 74.  Although Plaintiffs tendered a claim for these damages to Defendant under the Policy, Defendant denied Plaintiffs' claim in its entirety, claiming that the damage at issue is not covered.

The Policy contains three general areas of coverage – Coverage A ("Dwelling Protection"), Coverage B ("Other Structures Protection"), and Coverage C ("Personal Property Protection").  Plaintiffs assert claims under Coverages A and B, both of which provide "all risk" insurance – meaning that coverage under those sections applies to any "sudden and accidental direct physical loss" that is not specifically excluded.  Dkt. # 9 (Skok Decl., Ex. B (Policy, at 6)).  Plaintiffs also assert a claim under a section of the Policy entitled "Additional Protection," which provides coverage for, among other things, "collapse" of the Property.  *Id*. at 13-16.

Defendant points to various exclusions in the Policy in support of its position that the damages in question are not covered.  Losses caused by any of the following perils, for example, are expressly excluded under Coverages A and B:

"1.      Flood, including surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

\*      \*      \*

4.      Water or any other substance on or below the surface of the ground, regardless of its source.  This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the residence premises.

5.      Earth movement, including earthquake, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, setting, or contracting of the earth.  This exclusion applies whether or not the earth movement is combined with water . . . .

\*      \*      \*

22.      Weather conditions which result in:

(a)      landslide or mudflow;

(b)      earth sinking, rising or shifting;

(c)      flood, surface waters, waves, tidal water, or spray from any of these, whether or not driven by wind;

(d)      water backing up from a sewer or drain or overflowing from a sump pump well; or

(e)      water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure."

*Id*. at 6-9.

Coverages A and B also excludes coverage for "collapse," "except as specifically provided in Section I – Additional Protection under item 11, 'Collapse.'"  *Id*. at 7.  Under that

1   provision, coverage for "collapse" applies only with respect to a "sudden and accidental direct

2   physical loss" caused by certain perils that are specifically enumerated in the Policy.  Of those

3   enumerated perils, only one category is relevant here – namely, "a loss we cover under Section I,

4   Coverage C – Personal Property Protection."  *Id*., Ex. C (Endorsement, at 5).

5          Although Coverage C provides coverage for damages caused by "windstorm," it excludes

6   coverage for damages caused by "waves," "[e]arth movement," and "[w]eather conditions which

7   result in . . waves," "whether or not" those waves are "driven by wind."  Dkt. # 9 (Skok Decl.,

8   Ex. B (Policy, at 12-13)).  Defendant asserts that the damages underlying Plaintiffs' claim –

9   including its claim of "collapse" – resulted from waves, earth movement, and/or weather

10  conditions, and that those damages are therefore excluded under the Policy.  Dkt. # 8.

11         Plaintiffs argue that "coverage does in fact exist for (a) damage caused from 'water borne

12  material,' and (b) 'collapse' caused by 'windstorm,'" Dkt. # 18 at 9, as neither of those perils are

13  specifically excluded under the Policy, and "collapse" caused by "windstorm" is expressly

14  covered.

15         On May 9, 2011, Plaintiffs initiated this action by filing a complaint in the King County

16  Superior Court, asserting claims for declaratory relief, breach of contract, violation of

17  Washington's Insurance Fair Conduct Act, and violation of Washington's Consumer Protection

18  Act. Dkt. # 1.  Defendant subsequently removed the action to this Court.  *Id*.  On August 11,

19  2011, the parties filed their respective Motions.  Dkt. ## 8, 10.

20                              **II. <u>ANALYSIS</u>**

21         Defendant argues that the Complaint should be dismissed in its entirety pursuant to

22  Federal Rule of Civil Procedure 12(b)(6) because (1) Plaintiff fails to plead a cause of its alleged

23  loss; and (2) the Policy expressly excludes coverage for the losses at issue.  Plaintiffs respond

24

ORDER ON DISPOSITIVE MOTIONS - 4

1   that their losses are covered because "'water born debris' is a non-excluded peril, and because

2   the Policy expressly covers 'collapse' from 'windstorm.'"  Dkt. # 18 at 2.

3        On these same grounds, Plaintiffs argue that they are entitled to summary judgment on

4   their claim for declaratory relief, in which they seek a judicial determination that (a) the Policy

5   does not exclude damage cause by debris or water-born material, (b) the Policy covers "collapse"

6   caused by windstorm, and (c) the damage at their house constitutes a "collapse" under the terms

7   of the Policy.  Dkt. # 10 at 2.  Each motion is addressed in-turn.

8        A.    Defendant's Motion to Dismiss

9              1.    *Legal Standard*

10       A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.

11  Such dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the

12  absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police*

13  *Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  The issue on a motion to dismiss for failure to state a

14  claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to

15  offer evidence to support the claims asserted.  *Gilligan v. Jamco Development Corp.*, 108 F.3d

16  246, 249 (9th Cir. 1997).  When evaluating a Rule 12(b)(6) motion, the Court must accept all

17  material allegations in the complaint as true and construe them in the light most favorable to the

18  non-moving party.  *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994).   The Court is not

19  required, however, to accept "conclusory legal allegations cast in the form of factual allegations

20  if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult*

21  *Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

22       Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and

23  plain statement of the claim showing that the pleader is entitled to relief."  5A Charles A. Wright

24

1    & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990).  The notice pleading

2    standard set forth in Rule 8 establishes "a powerful presumption against rejecting pleadings for

3    failure to state a claim."  *Gilligan*, 108 F.3d at 248 (citations omitted).  Therefore, a Court must

4    not dismiss a complaint with prejudice unless "it appears beyond doubt that the plaintiff can

5    prove no set of facts in support of his claim which would entitle him to relief."  *Conley v.*

6    *Gibson*, 355 U.S. 41, 45-48 (1957); *U.S. v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.

7    1981).

8                      2.      *Discussion of Motion to Dismiss*

9                           a.      Allegations Regarding Causation

10          Defendant first argues that the Complaint must be dismissed because Plaintiffs have

11   failed to adequately plead the cause of their alleged loss.  Dkt # 8 at 7.  The Court disagrees.

12   Plaintiffs have alleged a set of facts that, if established, would satisfy the causation element of

13   their claim.  *Conley*, 355 U.S. at 45-48; *City of Redwood City*, 640 F.2d at 966.  Indeed, the

14   Complaint plainly refers to a "windstorm," "logs and other debris in the water repeatedly

15   collid[ing] with the home's foundation," and allegations that the home "[fell] down . . . or

16   otherwise [lost] its original constructed form" as a result of those perils.  Dkt. # 1 (Compl., at ¶¶

17   12-14).  These allegations give Defendant "fair notice of what the . . . claim is and the grounds

18   upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Nothing more

19   is required under Federal Rule 8.  *Id.*

20                           b.      Policy Exclusions for Water, Waives, Earth Movement, and
                                     "Weather Conditions"

21

22          Defendant next argues that the Complaint must be dismissed because the damages for

23   which Plaintiffs complain were caused by water, waves, earth movement, and "weather

24   conditions" – perils that are expressly excluded under the Policy.  Plaintiffs respond that the

1   Complaint alleges damage caused by "water-borne debris" (a non-excluded peril) and

2   "windstorm" (an expressly covered peril), and that it therefore cannot be dismissed pursuant to

3   Rule 12(b)(6).

4         Because the allegations in the Complaint are presumed to be true for purposes of

5   Defendant's Motion, *Barron*, 13 F.3d at 1374, the critical question before the Court is not

6   whether "debris," "water-borne material," or "windstorm" actually caused the damage in

7   question, but whether damage caused by such perils could possibly give rise to coverage under

8   the Policy. *Id.* For the reasons set forth below, the Court concludes that damages arising from

9   such perils may give rise to coverage under the Policy.

10        Although the Policy expressly excludes damage caused by water, waves, earth

11   movement, and "weather conditions," Dkt. # 9 (Skok Decl., Ex. B (Policy, at 6-9)), Plaintiffs do

12   not allege that water, waves, earth movement, or "weather conditions" – standing alone or in

13   combination with each other – caused damage to their Property. Instead, Plaintiffs allege that

14   logs propelled by waves caused the damage at issue. Because the Policy makes no mention of

15   destructive materials propelled by waves (such as logs), the exclusions on which Defendants rely

16   are at best ambiguous as to the issue. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724,

17   733 (1992). Under Washington law, ambiguous exclusionary clauses are strictly construed

18   against the insurer. *Rodriguez v. Williams*, 107 Wn.2d 381, 384 (1986).

19        Moreover, "[i]n evaluating [an] insurer's claim as to meaning of language used, courts

20   necessarily consider whether alternative or more precise language, if used, would have put the

21   matter beyond reasonable question." *Lynott v. Nat'l Union Fire Ins. Co*., 123 Wn.2d 678, 688

22   (1994) (*quoting* 13 John A. Appleman & Jean Appleman, *Insurance Law & Practice* § 7403

23   (1976)). Defendant could have excluded damage arising from "water-borne material," as other

24

1    insurance companies have done,[1] and such an express exclusion would have "put the matter

2    beyond reasonable question." *Lynott*, 123 Wn.2d at 688.  Defendant's failure to do so militates

3    against the position it now seeks to advance.  *Id.*

4           Defendant argues that "[t]here is no true distinction here between the water or waves and

5    the material they contain," Dkt. # 21 at 4, thereby suggesting that the water and wave exclusions

6    apply equally (albeit implicitly) to logs contained within waves.  The Court believes, however,

7    that an average insurance purchaser would distinguish between waves and dangerous physical

8    objects propelled by waves.  *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 424 (1997) (an

9    insurance policy should be construed "according to the way it would be read by the average

10   insurance purchaser").

11          A simple illustration underscores the point.  Suppose, for example, that instead of a log, a

12   wave carrying an undetonated World War II naval mine struck Plaintiffs' home.  Any reasonable

13   person would distinguish between the naval mine and the wave that propelled it, and an insurer

14   would not be entitled to deny coverage simply because a wave happened to propel the "debris" in

15   question.  The mine and the wave are distinguishable perils, even though they cooperated in

16   bringing about the damage at issue.  Such is the case here.[2]  Waves and logs carried by waves are

17   factually distinguishable perils.

18          This is particularly true in the context of the instant case, where Plaintiffs allege that

19   waves have crashed into their waterfront home without incident since its construction in 1947,

20   and that it was only in November of 2010 – when waves *carrying logs* struck the Property – that

21   _____

22   [1] *See, e.g.*, *Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.)*, 495
     F.3d 191, 202 (5th Cir. 2007); *Leonard v. Nationwide Ins. Co.*, CIVIL ACTION NO. 1:05CV475
     LTS-RHW, 2006 U.S. Dist. LEXIS 43198, *3-4 (S.D. Miss. June 13, 2006).

23   [2] That logs are likely to cause substantially less damage than naval mines is of no consequence to
     the Court's analogy, as both types of "debris" have potential for significant destruction, and the

24   difference between their destructive potential is merely a matter of degree.

1   damage occurred.  Dkt. # 1 (Complaint, ¶¶ 7, 12).  In other words, Plaintiffs allege that it was the

2   logs, and not merely the waves propelling them, that damaged their home.  The Court finds this

3   to be a principled and meaningful distinction, and that it further distinguishes logs and waves as

4   distinct perils.

5          This conclusion is not altered by the Washington Supreme Court's decision in *Kish v. Ins.*

6   *Co. of N. Am.*, 125 Wash.2d 164, 170 (1994).  In *Kish*, the court concluded that "flood" and

7   "rain-induced flood" were not distinct perils under the insurance policies at issue, and that the

8   plaintiffs could not overcome a flood exclusion contained therein "merely by affixing an

9   additional label or separate characterization" to the flood.  *Id*. at 170.  As the *Kish* court noted,

10  "the average purchaser of insurance would expect that the term 'flood' would encompass rain

11  induced flood."  *Id*. at 171.

12         This case is distinguishable from *Kish*.  Unlike the plaintiffs there, Plaintiffs here are not

13  simply "affixing an additional label or separate characterization" to an otherwise excluded peril.

14  On the contrary, damage caused by logs is not excluded under Plaintiffs' "all risk" Policy, and

15  they allege that "logs and other debris in the water" smashed into their Property during a

16  windstorm.  Dkt. # 1 (Notice of Removal, Ex. A (Complaint, at ¶¶ 11-12)).  That waves may

17  have *propelled* logs into Plaintiffs' home does not transform logs and waves into a single

18  undifferentiated peril.

19                           c.      Coverage for "Collapse" Caused by "Windstorm"

20         Defendant also argues that Plaintiffs cannot state a claim under the Policy's "collapse"

21  provision because coverage for "windstorm" – the alleged efficient proximate cause of the

22  "collapse" – is subject to the same wave, water, earth movement, and "weather conditions"

23  exclusions applicable under Coverages A and B.  As set forth above, however, those exclusions

24

1   do not bar coverage for damage caused by logs, even if those logs were propelled by waves.

2   This conclusion is unaltered by the fact that the waves in question may have resulted from a

3   windstorm.  As such, Plaintiffs' claim for "collapse" coverage – like its claims under Coverages

4   A and B – cannot be dismissed on account of the water, waves, earth movement, and "weather

5   conditions" exclusions.[3]

6       B.       Plaintiffs' Motion for Summary Judgment

7           Plaintiffs move for summary judgment on their claim for declaratory relief, seeking a

8   judicial determination that (a) the Policy does not exclude damage caused by debris or "water-

9   borne material"; (b) the Policy covers "collapse" caused by "windstorm"; and (c) the damage to

10  their Property qualifies as a "collapse" under the Policy.  In the foregoing section, the Court has

11  already made a determination as to item (a).  The Court now turns to items (b) and (c).

12          1.       *Summary Judgment Standard*

13          Summary judgment is appropriate where the pleadings, the discovery and disclosure

14  materials on file, and any affidavits show that there is no genuine issue as to any material fact

15  and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P 56; *Anderson v.*

16  *Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).  The Court must draw all reasonable inferences in

17  favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Myers*, 969 F.2d 744, 747 (9th Cir.

18  1992), *rev'd on other grounds*, 512 U.S. 79 (1994).  In ruling on summary judgment, a court

19  does not weigh evidence to determine the truth of the matter, but "only determine[s] whether

20  there is a genuine issue for trial."  *Crane v. Conoco, Inc*., 41 F.3d 547, 549 (9th Cir. 1994) (*citing*

21  *O'Melveny & Myers*, 969 F.2d at 747).  Material facts are those which might affect the outcome

22  of the suit under governing law.  *Anderson*, 477 U.S. at 248.

23  --------

24  [3] Because the Court denies Defendant's Motion, it need not determine at present whether "windstorm" was the efficient proximate cause of Plaintiffs' loss.

1          2.     *Discussion of Motion for Summary Judgment*

2          Plaintiffs ask the Court to conclude that the Policy covers "collapse" caused by

3  "windstorm."  The Policy unequivocally provides such coverage, subject to the same exclusions

4  for water, waves, earth movement, and "weather conditions" set forth in Coverages A and B.

5  Dkt. 9 (Skok Decl., Ex. B (Policy, at 10, 13, 15-16)).[4]

6          The question, however, is not whether a windstorm – standing alone – caused Plaintiffs'

7  home to collapse.  Instead, Plaintiffs allege that a windstorm gave rise to waves that in turn

8  propelled logs into their Property.  Because the Court has already determined that the Policy's

9  exclusions for water, waves, earth movement, and "weather conditions" do not exclude coverage

10 for logs propelled by waves, the only remaining issues are (1) whether Plaintiffs' home did, in

11 fact, "collapse"; and (2) whether "windstorm" was the efficient proximate cause of the

12 "collapse."  Genuine issues of material fact preclude summary judgment as to both of these

13 issues.

14         The Policy defines the term "collapse," in pertinent part, as follows:

15             actually falling down, falling into pieces, or otherwise losing its original
               constructed form.  It does not include settling, cracking, shrinking, bulging,
16             expansion, sagging, or bowing.  Furthermore, collapse does not include or mean
               substantial structural impairment or imminent collapse.

17
18 Dkt. # 9 (Skok Decl., Ex. C (Endorsement, at 5)).

19

20 _____

   [4] The Court is not persuaded by Plaintiffs' argument that the "Collapse" provision incorporates
21 only that portion of Coverage C specifying the "Losses We Cover Under Coverage C," and that
   it does not incorporate the portion of Coverage C containing the water, wave, earth movement,
22 and "weather conditions" exclusions. Dkt. # 9 (Skok Decl., Ex. B (Policy, at 10-13)).  The
   "Collapse" provision provides coverage for "a loss we cover under Section I, Coverage C –
23 Personal Property Protection," *id*., Ex. C (Endorsement, at 5), and clearly incorporates the
   entirety of "Section I, Coverage C," including the water, wave, earth movement, and "weather
24 conditions" exclusions.

1    Relying on the report of their structural engineer, Plaintiffs claim that their home actually

2    fell down and lost its original constructed form because it "displaced both horizontally and

3    vertically, dropping several inches downward," Dkt.# 11 (Say Decl., ¶ 8), and because the

4    "building superstructure is significantly out of plumb" and "leaning toward Puget Sound." *Id*. at

5    ¶ 10; Dkt. # 10  at 10-11.  According to Defendant, "whether a 'collapse' actually occurred is

6    inherently a factual issue," and the parties should therefore be entitled to take discovery on this

7    issue.  Dkt. # 16 at 21.  The Court agrees with Defendant.

8    On the record currently before it, the Court cannot determine whether Plaintiffs' home

9    "collapsed" as that term is used under the Policy.  Indeed, while the evidence demonstrates that

10   Plaintiffs' home displaced "several inches downward," the exact amount of the alleged

11   displacement is not identified, and it remains unclear whether such movement satisfies the

12   definition of "actually falling down."[5]  The Court requires a more fully-developed record before

13   it can make a determination on this issue, and Defendant is entitled to take discovery as to the

14   extent of the displacement caused to Plaintiffs' home.

15   The same result follows with respect to Plaintiffs' claim that their home lost its "original

16   constructed form."  Indeed, although there does not appear to be any dispute that Plaintiffs'

17   home is "out of plumb," a factual question remains as to whether that damage constitutes

18   "settling, cracking, shrinking, bulging, expansion, sagging, or bowing," or something more than

19

20

---

21   [5] Plaintiffs urge the Court to conclude that any downward movement whatsoever of Plaintiffs'
     home constitutes "actually falling down."  The Court does not read the "actually falling down"

22   provision so expansively, as infinitesimal movements in a home's foundation obviously would
     not be considered a "collapse."  Under certain circumstances, however, the Court believes that a
     house may "actually [fall] down" based upon a more significant downward displacement, even

23   though it does not literally fall over and/or into pieces.  Whether Plaintiffs' home has sustained

24   sufficient displacement to constitute a "collapse" is an unresolved question of fact.

1   the "substantial structural impairment" that is excluded under the Policy's definition of

2   "collapse."  Dkt. # 9 (Skok Decl., Ex. C (Endorsement, at 5)).

3          The Court also is unable to determine on the limited record before it whether

4   "windstorm" was the efficient proximate cause of the alleged "collapse."  Plaintiffs concede, in

5   any event, that the proximate cause of their loss is a question of fact.  *See* Dkt. # 18 at 16,

6   ("Whether the damage was proximately caused by the excluded perils or the covered peril of

7   windstorm would at most create a question of fact for the jury.").

8                              **III. <u>CONCLUSION</u>**

9          For all of the foregoing reasons, Defendants' Motion to Dismiss, Dkt. # 8, is DENIED,

10   and Plaintiffs' Motion for Partial Summary Judgment, Dkt. # 10, is GRANTED IN PART and

11   DENIED IN PART.  Plaintiffs' Motion is GRANTED to the limited extent that the Court finds

12   that the Policy does not exclude coverage for logs propelled by waves, and is DENIED in all

13   other respects.

14          Dated this 10 day of January 2012.

15

16                              RICARDO S. MARTINEZ

17                              UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24